NOT RECOMMENDED FOR PUBLICATION OR CITATION
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-055-HRW

DEWAN L. ROBBINS                                                    PLAINTIFF

VS:                **MEMORANDUM OPINION AND ORDER**

DENISE BLACK, ET AL.                                          DEFENDANTS

**** **** **** ****

This matter is before the Court on the parties' dispositive Motions, all of which are

ripe for a decision.

## BACKGROUND

On May 25, 2007, Dewan L. Robbins, an individual then confined in the Luther

Luckett Correctional Complex in LaGrange, Kentucky, in service of a state sentence,

submitted a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, and a Motion to

proceed *in forma pauperis*. The Motion was granted and the Court then screened the

complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601,

607-8 (6th Cir. 1997).

In a post-screening Order, the Court summarized the Plaintiff's factual allegations

and construed them to assert an Eighth Amendment claim that while he was incarcerated at

another state prison, the Little Sandy Correctional Complex ("LSCC"), in Sandy Hook,

Kentucky, he was deprived of appropriate treatment for his serious medical needs by an

LSCC nurse, Denise Black; Doctor Ronald Fleming; and Unit Directors Keith Helton and David Green.

The specific allegations were that when Plaintiff entered into the custody of the Kentucky Department of Corrections ("KDOC") in January of 2006, he had severe neck and back pain from a 1989 injury, when he was shot in the neck with "a Broad- head Razor Arrow." It had caused him to be paralyzed for 4-6 months and required surgery for pins and screws to be placed in the side of his neck.

Upon his evaluation as an incoming prisoner, Plaintiff alleged, he informed the medical staff of this history, and on March 6, 2006, a bottom bunk was prescribed. He attached to his complaint a "Bottom Bunk Assignment Form," which contains the March 6th date, makes the bottom bunk assignment, and gives reasons therefor:

> **The above named offender has been assigned a Bottom Bunk:**
> Permanent
>
> **Comments:**
> hx of neck injury, achilles tendon repair, and knee surgery

Record No. 1, Attachment 3, signed by a Sherry Mekelburg. Robbins alleged that at some time shortly thereafter, however, Unit Director Helton purportedly told he that he didn't care what his needs were and assigned him a top bunk.

Plaintiff alleged that he was in the top bunk from March until June or July of 2006. After returning from a trip for a court appearance, Robbins was placed in another housing unit, where that Unit Director, Defendant Green, again placed him in a top bunk. The

2

Plaintiff alleged that when he advised Defendant Green of his medical prescription for a bottom bunk, Green told him to have the LSCC medical staff verify the prescription.

Plaintiff claimed that Nurse Black and Dr. Fleming refused to verify that he was prescribed a bottom bunk, however. At some point, he obtained a bottom bunk, but in February of 2007, he had to relinquish that bed and was allegedly assigned an upper bunk again. On March 12, 2007, the Plaintiff filed a grievance and asked for a bottom bunk assignment "at this facilities earliest convenience." The response was as follows:

> KY HealthCare policies are follow at this facility to determine need for bottom bunk status MD does not fell [sic] there is a need at this time

Attachment #1, dated March 19, 2007.

Between the time when Robbins wrote the grievance and the time when he received the response to it a week later, a related incident occurred. On March 14, 2007, as the Plaintiff was attempting to climb onto his top bunk, the leg of the chair on which he was standing gave way. He fell to the floor and re-injured his neck and back. Robbins stated that x-rays were taken and he was given a shot for his pain in the medical department. He has attached two prescriptions which were also provided by the Defendant Doctor on that same March 14th date.

In one prescription, Dr. Fleming ordered that the Plaintiff have a bottom bunk and soft neck brace for the next 7 days, and in the other he directs that Robbins do no work and have limited activity, "Sports Restricted, No Strenuous Activity, No Heavy Lifting," also for 7 days. However, according to the Plaintiff, the one shot which he received on March 14th

3

was all of the treatment he received for pain, despite seeking pain relief on the next two days. On March 16, 2007, he filled out another grievance form describing his fall and asking for "proper treatment."

Plaintiff has claimed that he was transferred out of the LSCC later in March, in an attempt to hinder his ability to appeal the grievance proceedings, but he wrote to John D. Rees, KDOC Commissioner, the last step in the appeal process nonetheless. The Commissioner responded that Robbins had failed to appoint a representative to continue his grievance upon his removal from the LSCC, as is required by KDOC policy, and so "your grievance is now moot."

Fifteen days later, Robbins filed the instant complaint and attachments going to the issues of his entitlement to a bottom bunk and his medical treatment after his March 14, 2007 fall. The Court directed the four LSCC Defendants to respond to Robbins' Eighth Amendment claims. All of the Defendants – and the Plaintiff – have now filed dispositive motions.

## DEFENDANT DR. FLEMING'S MOTION

With his own affidavit, Dr. Fleming has moved for dismissal or in the alternative for summary judgment. With regard to the facts, he initially explains that he is no longer a University of Kentucky Hospital employee and no longer has access to relevant records. Fleming does, however, admit that in that employment, he once provided medical service to the KDOC and may have done so with regard to Plaintiff. He acknowledges that he

would have been required to follow the KDOC's Medical Guidelines with regard to assigning a bottom bunk, which are attached and which mandate such an assignment only in six instances, none of which Robbins meets.

Later, after Defendant Black filed her Motion for Summary Judgment with the Plaintiff's medical records attached, Dr. Fleming filed a formal Reply, referring to information in that record and adding to his defense. He states that he still does not know why Plaintiff lost his March 6, 2006 bottom bunk assignment, but Robbins' own records show that upon his request to be returned to a bottom bunk, on March 7, 2007, the Defendant doctor evaluated Plaintiff and denied the request on the ground that "he does not fit the criteria given by the DOC for bottom bunks."

With regard to Plaintiff's medical care after his fall, the doctor again points to the medical records which show multiple types of care and prescriptions which he provided for Robbins. In addition to taking x-rays, diagnosing a sprain, providing a pain shot, and prescribing neck brace, bottom bunk and no work or strenuous activities for 7 days, the same records show that Fleming prescribed 14 days of anti-inflammatory and muscle relaxer medications. Additionally, because the muscle relaxers required the Plaintiff to report to the prison's "pill line" to get each pill, there is chart providing evidence of his having shown up and having taken Dr. Fleming's prescribed medications. Finally, this Defendant points out, the records show that Plaintiff did not seek the doctor's attention again until March 22nd and

upon that request, he was scheduled for April 2, 2007, appointment, although it could not be kept because Robbins was transferred away from the LSCC before that date.

As to the law, this Defendant urges dismissal or entry of summary judgment on the merits. He claims that Plaintiff failed to state a claim under well known Supreme Court holdings in Eighth Amendment-prisoner-medical-care cases. With regard to both the bottom bunk and post-fall treatment claims, Dr. Fleming insists that Plaintiff was not denied life's necessities; nor was this Defendant deliberately indifferent to Robbins' medical needs – to the contrary, the record shows that Fleming medically evaluated Robbins for a bottom bunk upon the prisoner's request, but found that the Plaintiff did not qualify; and the doctor also medically evaluated him after the fall, and provided multiple appropriate treatments. The doctor contends that, at most, this constitutes a difference of opinion between a doctor and a patient, and the Supreme Court of the United States has held that a difference of opinion is not actionable under 42 U.S.C. § 1983.

Dr. Fleming also points out that to the extent that he is sued in his official capacity, he is entitled to immunity under the U.S. Constitution's Eleventh Amendment, as he was a state employee acting in his employ at the University to Kentucky Hospital. Additionally, he claims to be entitled to qualified immunity in his individual capacity because Plaintiff has failed to show that his conduct violated any Constitutional right.

In opposing Dr. Fleming's Motion, the Plaintiff points to unsettled facts in the record, such as the dates when he had and did not have the bottom bunk assignment, and he repeats

6

his claims. He insists that his bottom bunk prescription had been ordered to be permanent, that Dr. Fleming's failure to reinstate it evidenced his deliberate indifference, and that the doctor admitted in this record that Plaintiff fell when climbing up to the top bunk, thereby admitting to having injured Plaintiff by refusing him the bottom bunk. As to the law, Plaintiff contends that Fleming was a contract physician and is, therefore, not protected by qualified immunity, citing authority. Finally, Plaintiff opines that although summary judgment may be appropriate at a later date, it is premature now.

### DEFENDANT NURSE BLACK'S MOTION

With her affidavit and Plaintiff's medical records attached, the LSCC nurse, Denise Black, swears that she never personally treated Plaintiff, nor does she recall his asking her to verify a bottom bunk assignment. "However, if I had received such a request, I would have referred Plaintiff to the doctor for an evaluation of his condition. In fact, on March 7, 2007, Plaintiff was evaluated by Dr. Fleming."

This Defendant's position is that "Plaintiff's medical records clearly belie" his claims against her. As to the bunk issue, she agrees with Dr. Fleming's conclusion that Plaintiff did not suffer from any of the six conditions listed in the Guidelines so as to qualify for a mandatory bottom bunk as being "medically necessary," in the attached KDOC Guidelines. She also explains that under the Guidelines, a physician, nurse practitioner, or physician assistant has discretion to order a "medically optional" bottom bunk for other medical

7

conditions, but she is not a physician, nurse practitioner, or physician assistant. Thus, she could not have provided what Robbins wanted.

With regard to the post-fall care Robbins received, this Defendant points to institutional medical records which document not only the multiple types of attention which he received immediately, but also the two weeks thereafter, explaining that Plaintiff was provided a 14-day supply of Feldene, the anti-inflammatory which he could take as needed, and was prescribed Flexeril 10 mg, a muscle relaxer, to be taken 3 times daily for 14 days, the latter drug being administered only during the prison's pill calls. Plaintiff appeared at pill call and took the Flexeril once per day every day from March 16th to March 23rd of 2007. He left the institution on March 29th.

In sum, Defendant Black, contends that she is entitled to entry of summary judgment on the merits, as there is no evidence that she was deliberately indifferent as to any alleged medical issue, Robbins has failed to establish any genuine issue of material fact, and she is entitled to judgment as a matter of law. Plaintiff has not filed a Response to Nurse Black's Motion.

## DEFENDANT UNIT MANAGERS' MOTION

Unit managers Keith Helton and David Green also move for entry of summary judgment in their favor, and they, too, point to the Plaintiff's own medical records as "the best witness against these bogus claims."[1] These Defendants emphasize that they are non-

---

[1] Although not necessary to this Court's decision herein, the Court notes that the medical records reveal Plaintiff's documented weight, non-compliance with medical advice, and persistent demand for a bottom bunk after he

medical prison officials, who rely on the medical professionals to treat and advise about prisoners' medical conditions and needs.   Further, they contend that Plaintiff never demonstrated to them that he was entitled to a bottom bunk; he never filed a grievance at the time his top bunk assignments were made in 2006 or early 2007; nor was there any injury diagnosed or proven.

These Defendants' position is that there may be a medical diagnosis disagreement in this case, but there is no Eighth Amendment violation stated against them.   In fact, they maintain that there are insufficient factual allegations and no causation allegations so as to state a Constitutional claim of any kind under 42 U.S.C. § 1983, thus entitling them to release from this lawsuit.   With no genuine issues of material fact about them having been presented by Robbins, Helton and Green argue, they are entitled to judgment in their favor as a matter of law.   They also rely on the qualified immunity defense.

In an angry Response, Plaintiff insists that he met two of the criteria for a bottom bunk; all of the Defendants were aware of his weight and limited mobility; but these Defendants refused him a bottom bunk regardless.   Also, the prison did not provide a strong enough chair to get him into the upper bunk.   Thus, he contends, the Defendants caused the

---

left LSCC. At the next institution, his medical records include the following:

> We received your sick call slip requesting that your Bottom bunk be renewed.  Due to the fact that you have refused all treatment that the medical department has offered you for your back issues there is not justification for you to have a bottom bunk.   You have been non compliant with your medications and you have signed refusals to Knock offs for sports and weight pile.

Record No.55, Attachment dated August 28, 2007.

chair's collapse and his fall.  Additionally, his records show and the Defendants knew that some of the medications made him dizzy; and the basis of his obesity is not excess calories, as noted in the records, but his limited mobility to work off the calories.

Plaintiff repeats his legal arguments, opposing the Court's application of qualified immunity and arguing that he has, indeed, stated an Eighth Amendment claim.  He insists this case is not a matter of a mere difference of opinion: rather, all parties have agreed as to his conditions, *i.e.*, his weight, neck injury, condition of his knee, and his achilles tendon repair, but they were deliberately indifferent to them, for which they should be held liable.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As the Defendants were filing their dispositive Motions, the Plaintiff brought one himself.  With his supporting affidavit, Robbins points out that the Defendants admit that he was relegated to a top bunk in June of 2006, despite the March 6, 2006, "permanent" prescription for a bottom bunk.  Therefore, he argues, in placing him in a top bunk, they were demonstrating their deliberate indifference to his serious medical needs, and therefore, he continues, there is no genuine issue of any material fact and he is entitled to judgment as a matter of law.

Dr. Fleming, however, has responded to the Plaintiff's cross Motion for Summary Judgment by pointing out Plaintiff's admission that there is no genuine issue of material fact herein.  Additionally, Nurse Black has responded that Plaintiff has utterly failed to state a basis for entry of summary judgment in his favor; nor has he raised a genuine issue of

material fact to defeat the Defendants' Motions.  She insists that Robbins has still "failed to demonstrate that he has a constitutional right to a bottom bunk prescription."

## DISCUSSION

### Applicable Standards

This is a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983.  To establish a right to relief under this statute, the Plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the Defendants allegedly depriving him of those rights acted under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Street v. Corr.Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

The standard which Defendant Fleming must meet in his Motion to Dismiss is set out in Federal Rule of Civil Procedure 12(b), which provides that prior to responding to a Complaint, a Defendant may bring a Motion to Dismiss on certain grounds which are listed in the Rule.  Subsection (b)(6) permits a Motion to Dismiss for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  As to appropriate grounds, *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In reviewing a Rule 12(b)(6) Motion, the High Court has directed that well pled allegations must be taken as true and must be construed most favorably toward the non-movant.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should be dismissed

11

pursuant to Fed. R. Civ. P. 12(b)(6) only if there is not law to support the claims, if the

alleged facts are insufficient to state a claim, or if on the face of the complaint there is an

insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir.

1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976); *see also Gazette v. City of Pontiac*,

41 F.3d 1061 (6th Cir. 1994) (affirming dismissal of a § 1983 complaint).

   Rule 12(b)(6) continues, in pertinent part, as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure
> of the pleading to state a claim upon which relief can be granted matters
> outside the pleading are presented to and not excluded by the court, the
> motion shall be treated as one for summary judgment and disposed of as
> provided in Rule 56, and all parties shall be given reasonable opportunity to
> present all material made pertinent to such a motion by Rule 56.

*Id.* Thus, the plain language of the rule requires that if the Rule 12(b)(6) motion has

attachments which the Court considers then the motion "shall" be converted into a motion

for summary judgment pursuant to Rule 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840,

842 (6th Cir. 1993).

   In the case *sub judice*, because the Court has, indeed, considered the attachments

supplied by Dr. Fleming and the affidavits, guidelines and the medical records submitted by

the other Defendants, the Court must now consider all of the instant Motions as Motions for

Summary Judgment. *See Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999). Therefore, the

Court must also examine the standards for Summary Judgment.

   Summary judgment should be granted if the "pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

12

fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2007). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25; *see EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1093 (6th Cir. 1998). After the moving party carries its burden, the non-moving party must go beyond the pleadings to present significant probative evidence in support of the complaint by designating affidavits, depositions, answers to interrogatories, and admissions on file, which show that there is a genuine issue of material fact for trial. *Id; see Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial.

13

*Celotex,* 477 U.S. at 322-23.

Because the Defendants contend both that the Plaintiff has failed to meet the applicable standards for stating a constitutional claim and also that they are entitled to qualified immunity, the Court examines the standard for the latter also. Qualified immunity is described by the Supreme Court as follows: "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The first step of evaluating such a defense is for the Court to determine whether a constitutional violation occurred. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

Therefore, the question of whether the named Defendants are entitled to qualified immunity is the same as the initial question herein, *i.e.*, whether a constitutional violation occurred at the hands of persons acting under color of state law. The Plaintiff has the burden of establishing both that his rights were violated and that the Defendants are not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *Williams v. Mehra*, 186 F.3d 685, 692-93 (6th Cir. 1999) (quoting *Celotex,* 477 U.S. at 322).

### Application of Standards

Plaintiff Robbins has named four individuals at LSCC as Defendants who allegedly violated his rights under the Constitution's Eighth Amendment, prohibiting the infliction of

14

cruel and unusual punishment on prisoners. The Supreme Court has held that "[i]n order to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Therefore, as the Defendants stress, the prisoner-litigant herein must show both "deliberate indifference" and "serious medical needs." *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897 (6th Cir.2004).

The second component, deliberate indifference, may be "manifested by prison doctors in their response to a prisoner's needs or by prison [staff] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104. Liability attaches only when the Plaintiff "demonstrate[s] deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994) (citation omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause").

15

In the case *sub judice*, the administrator defendants insist that they are not the ones who can make optional bottom bunk decisions and they also insist that the Plaintiff did not demonstrate the seriousness of his medical need for a bottom bunk by obtaining his doctor's ruling on the matter. Both of the medical professionals at LSCC have made the assessment and have insisted, then and now, that Plaintiff did not/does not have a serious medical need for a bottom bunk; nor a serious medical need for additional treatment after his fall, the two issues conditions complained-of herein. The Court agrees.

The evidence in this case is that prisoners highly value and desire a bottom bunk designation, which the instant Plaintiff managed to obtain in 2006 from someone not clearly identified herein; Plaintiff was moved to a top bunk at least twice and stayed there for months without complaint; when Robbins asked for a doctor's evaluation for a bottom bunk designation a year later, in March of 2007, he was measured against the KDOC criteria, which mandate a bottom bunk only for inmates with the following conditions:

1. Seizure Disorder
2. Amputees
3. Wheelchair Bound
4. Class IV Cardiac Disease
5. Immediate Post-Op Patient (order good for 3 month duration only)
6. Blindness

*Kentucky Corrections Health Care Services Protocol*, <u>Bottom bunks</u>, issued 8-28-2003. Even under his own allegations, Plaintiff does not contend that he meets this protocol.

The same policy also provides for a "medical optional" bottom bunk assignment but it "may only be issued by a physician or mid-level practitioner." *Id.* The only Defendant

16

who qualifies to grant this optional prescription is Dr. Fleming. Dr. Fleming, having performed the requested medical evaluation, concluded that Robbins also did not qualify under the four separate KDOC criteria for an optional bottom bunk assignment. Plaintiff was not (1) an elderly frail patient; nor did he suffer (2) Class III Cardiac Disease, (3) Chronic Orthopedic Conditions that severely limit mobility, or (4) Severe Obesity. *Id.*

To the extent that Plaintiff suggests that the doctor should have found that he qualified under the limited mobility and/or obesity criteria, he provides no evidence thereof. Neither the medical record keepers nor any Defendant – nor the Plaintiff himself – has described his limited mobility or his obesity as "severe," as the protocol demands. To the contrary, the record herein shows that Plaintiff is sufficiently mobile to exercise and take part in athletic activities.

This is a classic case of a difference of opinion between a patient and his medical care provider, and the Supreme Court has ruled that if a case involves a difference of opinion between the Plaintiff and a doctor regarding the Plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989).

Plaintiff's claim that he should have received more medical attention after the fall has even less of a factual or legal basis. An examination, two X-rays, a diagnosis of a sprain, a pain shot, a neck brace, permission to not work and to have a bottom bunk for seven days, and a prescription for two appropriate medications for the following two-week period cannot

17

be said to evidence deliberate indifference to Robbins' sprains by Dr. Fleming – or anyone else. In contrast, there is no evidence presented by Plaintiff that he asked for and was denied attention on the days that he claimed.

With regard to either claim against Defendant Fleming, the Court finds that there is no genuine issue of material fact. Further, the doctor is entitled to judgment as a matter of law. A court will not second-guess the judgment of medical professionals who make diagnoses and treatment decisions. *Estelle*, 429 U.S. at 107. The Sixth Circuit has cited to *Estelle* and written further, as follows:

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Westlake v. Lucas*, 537 F.2d at 860. Such a distinction is particularly appropriate in this case.

The other medical Defendant, Denise Black, is also entitled to judgment in her favor. She has stated under oath that she does not remember having any part in his care, and Plaintiff has not contradicted her affidavit or exhibits. He has not presented any evidence that she refused to verify his eligibility for a bottom bunk or refused him another appointment with the doctor after his fall. In fact, he has not filed a Response to the nurse's Motion for Summary Judgment, and may be considered to have waived this claim. *See Humphrey v. U.S. Attorney Gen. Office*, 2008 WL 2080512 (6th Cir. 2008) (slip op.).

18

The non-medical Defendants are correct in their appraisal that Robbins has failed to state an Eighth or Fourteenth Amendment claim with regard to them. They insist that Plaintiff failed to demonstrate to them that he fit either of the protocol categories qualifying him for a bottom bunk or that he was at risk in the top bunk for months after he was moved from bottom to top bunk. When the Plaintiff made a formal complaint to get the bottom bunk prescription back, they did not just refuse, which could perhaps be interpreted as indifference, but they, rightfully, referred him to the medical department. In short, Plaintiff failed to show them then and has failed to show this Court now that he had a serious medical need for a bottom bunk; nor has he made any showing that Helton and Green somehow knew of, but were deliberately indifferent to, a risk of harm to Robbins.

As to the second claim, for more medical attention after his fall on March 14, 2007, the Defendant Administrators contend that Plaintiff has failed to allege that they were involved in any way. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Since the filing of his complaint and even after the filing of their Motion for Summary Judgment, Robbins has failed to present any evidence to support a claim that these staff members were deliberately indifferent to his serious medical needs, *i.e.*, any evidence showing a genuine issue of material fact which would defeat their Motion for Summary Judgment. The Court agrees with these Defendants on this issue also, and will grant their Motion for Summary Judgment.

19

The Court concludes that the Defendants have carried their summary judgment burden of showing there is an absence of evidence to support Plaintiff's claims and that the Plaintiff has failed in his burden to go beyond the pleadings to designate specific facts showing that there are genuine issues of material fact requiring a trial. *Celotex*, 477 U.S. at 324-25. In contrast, the Plaintiff has provided no basis for entry of summary judgment in his favor.

The conclusions herein are consistent with the decisions of other courts entertaining prisoners' similar claims, including unpublished opinions from the appellate court in this circuit. *See Carpenter v. Wilkinson*, 205 F.3d 1339, 2000 WL 190054 (6th Cir. 2000) (unpublished) (affirming summary judgment for staff who, *inter alia*, refused prisoner bottom bunk assignment); *Horton v. Corrections Corporation of America*, 187 F.3d 635, 1999 WL 623769 (6th Cir. 1999) (unpublished) (affirming summary judgment for staff who had referred the prisoner to medical staff to make the bottom bunk decision).

Finally, the Court notes that this Court, too, has addressed claims like these before. *See Alexander v. Federal Bureau of Prisons*, 227 F.Supp.2d 657, 665 (E.D.Ky. 2002) ("Even if the Court assumes that [the plaintiff's] left knee is so painful that it constitutes a serious medical need, the plaintiff has not presented any evidence of . . . the defendants' deliberate indifference"). *See Maggard v. O'Dea*, 51 F.3d 272, 1995 WL 150490, *2 (E.D.Ky. 1995) (unpublished) ("Even if Maggard had a serious medical need requiring him

20

to be assigned to a lower level single bunk cell, he was eventually assigned to such a cell. . . .").

Accordingly, **IT IS ORDERED** as follows:

(1)     Defendant Ronald Fleming's Motion for Summary Judgment [Record No. 33] is **GRANTED**.

(2)     Defendant Denise Black's Motion for Summary Judgment [Record No. 37] is **GRANTED.**

(3)     The joint Motion of Defendants Keith Helton and David Green for Summary Judgment [Record No. 55] is **GRANTED**.

(4)     Plaintiff Robbins' Motion for Summary Judgment [Record No. 45] is **DENIED**.

(5)     This action is **DISMISSED** and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

This the 5th day of September.

HENRY R. WILHOIT, JR.
SENIOR U.S. DISTRICT JUDGE